Tanton v. Boomgaarden.

## T. O. Tanton v. Christina Boomgaarden.

### Gen. No. 4210.

1. INSECURITY CLAUSE—*right to foreclose by virtue of.* The right to foreclose a chattel mortgage before the maturity of the debt secured, by virtue of an insecurity clause contained therein, which provides that the mortgagee shall have such right if " with or without apparent cause," he shall feel insecure, does not confer such right of foreclosure unless the feeling of insecurity is based upon some reasonable or probable cause. (Roy v. Goings, 96 Ill. 366 followed.)

2. INSECURITY CLAUSE—*when foreclosure, by virtue of, is proper.* The evidence held in this case to show such a state of facts as to justify a feeling of insecurity upon the part of a chattel mortgagee, and therefore to entitle him to foreclose by virtue of the insecurity clause in the mortgage.

3. MEASURE OF DAMAGES—*what is the, in an action for wrongful foreclosure of chattel mortgage.* The proper measure of actual damage in an action for the wrongful and premature foreclosure of a chattel mortgage, is the loss of the use of the property during the time it was out of the possession of the mortgagor.

4. MEASURE OF DAMAGES—*When vindictive damages are improper.* Vindictive damages should not be allowed in an action for the wrongful foreclosure of a chattel mortgage, where no improper conduct attended the seizure, and no unnecessary damage was done.

5. LEASE—*when not competent.* The introduction of a lease from the defendant to the plaintiff is erroneous, where the action was against the defendant for trespass in wrongfully foreclosing a chattel mortgage, and it was not shown that the plaintiff suffered any damage by reason of inability to perform any of the terms of the lease on account of the particular property in question having been taken by the defendant.

6. VERDICT—*when set aside.* A verdict which is overwhelmingly against the weight of the evidence will be set aside by the Appellate Court.

Action of trespass. Appeal from the Circuit Court of Livingston County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the April term, 1903. Reversed. Opinion filed October 23, 1903.

ELLWOOD, MEEK & LOVETT and R. R. WALLACE, for appellant.

HERBERT POWELL and R. S. McILDUFF, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

This was an action of trespass, brought by appellant against appellee, in the Circuit Court of Livingston County. The declaration contained five counts. The first three charge appellant with wrongfully and unlawfully seizing and taking possession of certain personal property claimed by appellee. The fourth count charges appellant with wrongfully and unlawfully and with force and arms taking from appellee, and disposing of, for his own use, 5,000 bushels of oats, and refusing to account therefor. The fifth count charges appellant with unlawfully breaking and entering a certain close of appellee and taking away her goods and chattels, tramping down and spoiling her grass, expelling her and family from the possession of said close and depriving her of the use and benefit thereof. Defendant filed five pleas, of which it is only necessary to mention the general issue, license and justification under chattel mortgages, upon which pleas issue was joined. No recovery was had for the alleged seizure of the oats, and that question will not be considered. A trial was had by jury and appellee recovered a verdict for $1,000. She remitted $300, and the court rendered judgment against appellant for $700 and costs, from which judgment this appeal is prosecuted.

Appellee was a tenant of appellant. On the 19th of December, 1896, she executed to one R. Strohmeyer a chattel mortgage on a lot of personal property, consisting of horses, colts, cows, hogs and farming implements, to secure a note for $405.63, due March 1, 1898. On the 15th of April, 1897, she executed to the same parties another chattel mortgage on the same property and a few additional articles to secure three other notes of hers to the said Strohmeyer, one for $202.58, dated April 9, 1897, due January 9, 1898, one for $200 and one for $65.65, each dated April 15, 1897, and coming due January 9, 1898. The latter mortgage recited that it was subject to the former mort-

gage. On June 28, 1897, Strohmeyer assigned and transferred to appellant said notes and mortgages. In August, 1897, the mortgaged property was seized and levied upon by virtue of an execution issued out of the Circuit Court, on a judgment against appellee's husband. Appellee at once notified appellant, who resided at Peoria, Illinois, of this fact, and he came to Pontiac, met appellee and assisted her in replevying the property from the officer, becoming security for her on the replevin bond. It appears that the deputy sheriff who levied the execution was also a constable, and as such constable had in his hands an execution issued from a justice of the peace court on a judgment against George Boomgaarden, appellee's husband, which execution was a prior lien, if lien at all, to the one levied upon the property.

Appellant testified, and this is not contradicted, that he knew nothing of this justice of the peace execution at the time the property was replevied from the sheriff, but that a few days before he took the property under his mortgages, he was at appellee's house, and she showed him a copy of the execution issued from the justice's court. He further testified that at that time appellee told him that he had better foreclose the mortgages on the property; that he told her he would study about it, and went home.

Charles Carrithers, who was working for appellee when the property was seized by the sheriff, testified that after the replevin suit was instituted and appellant had returned home, appellee requested him to write a letter to appellant asking him to come and foreclose his mortgage and settle up. He says the letter was written at appellee's house, with pen, ink and paper furnished by her for that purpose; that after it was written she gave him a couple of pennies to pay the postage on it; and that he took it to Gridley and mailed it the same day; and appellant testifies he received the letter. Carrithers further testifies that about three or four days after that, Husseman came to take the property; that when he came he handed appellee the mortgages and told her he had come to take the property; that

she said she was glad of it, that she wanted it settled up and showed him the property.

Eugene Husseman testified that he, as agent of appellant, went to appellee's residence, September 28, 1897, to take possession of the property under the two chattel mortgages; that he told appellee he was sent there by appellant to foreclose the mortgages, to which she replied, "I am glad he is going to take this stuff because it will end this trouble," and said she would show him what property belonged to her husband; that he took the property she pointed out as being hers, and described in the mortgages, and had possession of it twenty-six days, when he turned it over to the receiver as hereinafter mentioned.

Appellee denies requesting appellant to foreclose the mortgages, denies requesting the witness Carrithers to write the letter he testified about, and denies saying to Husseman, when he came to take the property, that she was glad appellant was going to foreclose the mortgages, and denies pointing out the property to him.

Appellee failed to prosecute the replevin suit brought by her against the sheriff and the same was dismissed. October 1, 1897, three days subsequent to the seizure of the property under the chattel mortgages. appellee filed a bill in chancery in the Circuit Court of Livingston County, in which, among other things, she alleged that the notes secured by the mortgages were procured by fraud and duress, and prayed that appellant be enjoined from selling the property under the chattel mortgages, that the same be canceled and set aside, and for the appointment of a receiver. The prayer for injunction was allowed and a receiver appointed who took possession of the property twenty-six days after it had been seized under the mortgages by appellant. Before the chancery suit was tried the mortgages became due, and appellant applied to the court for a modification of the injunction and for leave to foreclose his mortgages, which was granted and the property sold under the mortgages, by the direction of the court.

It was for the original seizure under the mortgages that appellee brought this suit.

Tanton v. Boomgaarden.

Both chattel mortgages contained a provision that "if said mortgagee or assignee with or without apparent cause, feel insecure, then said mortgagee or representatives may, without suit take possession of said goods and chattels wherever found and sell the same, etc." It is contended by appellant that under these provisions he might, at any time before maturity, take possession of the property without regard to whether he had any reasonable or probable grounds for feeling insecure.

It will be observed that the provisions above quoted from these mortgages are somewhat different from those of the mortgages mentioned in Roy v. Goings, 96 Ill. 366, and cases there cited. In those cases the provision read, that if the mortgagee should at any time before the mortgage became due "feel himself unsafe or insecure" he should have the right to take possession of the mortgaged property, and it was held, upon a review of all the previous authorities, that while the mortgagee had the right to judge of the crisis for himself, yet this right was subject to the limitation that his judgment of insecurity must be exercised in good faith upon reasonable grounds or probable cause. That while it was not necessary that it be made to appear in fact that the debt was unsafe or insecure, the circumstances must be such that a reasonable man thus situated might in good faith believe himself unsafe and insecure.

The difference between the mortgages referred to in Roy v. Goings, *supra*, and those here is, these mortgages read, that if the mortgagee or his assignee "with or without apparent cause" feel insecure, etc. To our minds, the right of the mortgagee to take possession of the mortgaged property before the maturity of the notes was dependent upon his feeling insecure, and the words, "with or without apparent cause," to feel insecure could not operate to give him the right to take possession before maturity without his, in fact, feeling insecure, and it is difficult to comprehend how he could feel insecure without any actual or apparent cause therefor. If the mortgage had given the mortgagee the right, without any limitation whatever, to take possession

of the mortgaged property at any time before the maturity
of the notes at his pleasure and sell the same, it may be that
he could do so, without giving any reason therefor, except
that it was his pleasure. But that is not the case here. To
exercise that right under these mortgages he must feel
himself insecure, and this being true, notwithstanding the
provision of the mortgages, that if he, with or without
apparent cause felt insecure, he might take possession, we
are of the opinion that the rule laid down in Roy v. Goings,
*supra*, applies, and that the feeling of insecurity must result
from some reasonable or probable cause. The court there-
fore did not err in instructing the jury that appellant must
act in good faith, and that he had not the right to take the
property arbitrarily and without probable or apparent cause,
but we are of opinion that the evidence disclosed a state of
facts that might well warrant appellant in feeling insecure.

The court adopted the correct rule as to the measure of
actual damages, in case plaintiff below was entitled to re-
cover, which was the loss of the use of the property during
the time it was in the possession of appellant, but we think
erroneously instructed the jury that they might award
vindictive damages, if they believed from the evidence
that appellant acted in bad faith, maliciously and from im-
proper motives. The evidence utterly failed to show a state
of facts that would justify vindictive damages. All the
plaintiff was entitled to was compensation. In addition to
the proof made by appellant as to why he felt insecure,
three witnesses, two of whom were disinterested, testified
that appellee requested and consented to the taking of the
property, and this is contradicted only by appellee. No
improper conduct attended the taking of the property, no
unnecessary damage was committed, and as we view the
case, there was nothing to warrant the instruction as to vin-
dictive damages. It is clear from the evidence that much
the greater portion of the verdict and judgment was for
vindictive damages. On the trial the court permitted the
plaintiff, over the objection of defendant, to introduce in
evidence and read to the jury the written lease from

Tanton v. Boomgaarden.

plaintiff to defendant for the farm she occupied.  We can not see what possible relevancy it had to any issue in the case.  It was not shown or offered to be shown that plaintiff had suffered any damages by reason of inability to perform any of the terms or covenants of the lease on account of the property having been taken from her by defendant. The lease contained numerous stringent provisions in favor of the landlord, and its admission in evidence was calculated to influence the minds of the jury against the defendant.  It should not have been admitted.

In our opinion the verdict for appellee was contrary to and not sustained by the evidence.  Appellant pleaded that he took the property by leave and license of appellee, and as we have before stated he and two apparently disinterested witnesses testified that appellee requested and consented to his so doing.  She, alone, contradicts them.  We are always reluctant to find the facts contrary to the finding and judgment of a court and jury, but when, as in this case, the testimony is overwhelmingly against the verdict and judgment, we see no other course we can consistently pursue.  It is true that cases do occur where an appellate court is justified in sustaining a verdict where the testimony, so far as the number of witnesses is concerned, preponderates against it as greatly as in this case, but this is because, in such cases, there are circumstances such as the apparent inability of the witnesses to have known the facts they testify to, their apparent prejudice, bias, interest or feeling in the case and many other circumstances that affect the weight and value to be given their testimony.  In this case appellant and appellee are equally interested and, so far as the weight to be given to their evidence is concerned, stand upon an equal footing.  Appellee is corroborated by no other witness and no fact or circumstances, unless it can be said the fact that she filed her bill to cancel the mortgages and for the appointment of a receiver three days after the property was taken from her, supports her.  Whatever may be said of this as a circumstance, we think it entitled to but little importance.  Appellant was corroborated by two

witnesses wholly disinterested in the result of the suit, and no reason, fact or circumstance appears why they should testify falsely in the matter nor why they are not worthy of belief. No useful purpose could be served by remanding this case. The judgment therefore will be reversed.

Finding of facts to be made a part of the judgment. We find from the evidence, as a matter of fact, that appellant took possession of the property described in the chattel mortgages at the request and by the consent of appellee, and that appellant had reasonable cause to, and did feel insecure.

*Reversed with finding of facts.*